UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JONATHAN JONES,**

   **Plaintiff,**

  v.

**OHIO DEPARTMENT OF PUBLIC SAFETY,** *et al.*,

   **Defendants.**

**Case No. 2:22-cv-3692**
**JUDGE DOUGLAS R. COLE**
Magistrate Judge Litkovitz

## OPINION AND ORDER

Jonathan Jones, a Cincinnati police recruit, claims that the Ohio Department of Public Safety discriminated against him based on race when it refused to grant him access the LEADS database. Proceeding pro se, he sued the state agency and two employees, asserting claims under both federal law (Title VII and § 1983) and state law. (Compl., Doc. 1). Defendants moved to dismiss. (Doc. 8). Jones believes they were untimely (by one day) in doing so. So he moved for an entry of default (Doc. 10) and default judgment (Doc. 11). Defendants shortly thereafter moved for leave to file their already filed motion out of time (Doc. 12).

For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Leave to File Out of Time (Doc. 12) and **DENIES** Jones's Motion for Default Judgment (Doc. 11). Next, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 8) and **DISMISSES** Jones's Complaint (Doc. 1) **WITHOUT PREJUDICE**. The Court further **GRANTS** Jones thirty days to seek leave to file an Amended Complaint under

Rule 15(a)(2) addressing the deficiencies set forth below and attaching that proposed Amended Complaint. During that time, this Court retains jurisdiction over this action.

## BACKGROUND

This matter is a companion case to another matter before this Court. (*See Jones v. City of Cincinnati*, No. 1:22-cv-530, S.D. Ohio). The overarching allegations are largely the same.

In 2019, Jones applied to become a Cincinnati police officer. (Doc. 1, #4). He met the initial prerequisites and received a conditional acceptance onto the force. (*Id.*). The trouble began when Jones applied to Defendant Ohio Department of Public Safety ("ODPS") to receive access to Ohio's LEADS system—a database that ODPS maintains and that police officers in Ohio routinely use. (*Id.* at #4–5). When ODPS learned Jones had prior arrests for domestic violence and a conviction for an M1 "serious misdemeanor," the agency determined Jones had shown a "lack of candor" on his application and denied him access. (*Id.*). And without access to LEADS, the Cincinnati Police Department found Jones could not effectively serve as a Cincinnati police officer. (*Id.*). Accordingly, the Department withdrew Jones's offer. (*Id.*).

Jones, who is black, believes Defendants—ODPS and its agents, John Moore and Kara Joseph—denied him LEADS access because of his race. (*Id.* at #2–3). Jones claims that neither his arrests nor his misdemeanor conviction should have disqualified him from accessing the LEADS system in the first place, and that, in any

2

event, his misdemeanor has been expunged. (*Id.*). Thus, according to Jones, it must be that Defendants denied him access because he is black.

On October 13, 2022, Jones sued ODPS, as well as its employees John Moore and Kara Joseph, in their official and individual capacities. (*Id.* at #1). Jones pursued four causes of action: (1) a Title VII race discrimination in hiring claim against ODPS; (2) a 42 U.S.C. § 1983 claim against Moore and Joseph for violating the Equal Protection Clause; (3) a claim under Ohio Revised Code § 4112.02 and/or § 4112.99 for racial discrimination in hiring against ODPS; and (4) an accompanying claim under Ohio Revised Code § 4112.02(J) and/or § 4112.99 against Moore and Joseph for aiding and abetting that unlawful discrimination. (Doc. 1, #34–37). Jones attached a right-to-sue letter from the U.S. Department of Justice authorizing his Title VII claim.[1] (Doc. 1-2, #40). For relief, Jones seeks monetary damages. (Doc. 1, #37).

As Jones is seeking default, certain details relating to service are also relevant. It appears Jones mailed a copy of the Complaint and a waiver of service form to each of the Defendants on October 13, 2022, through the USPS "Priority Mail" service. (Doc. 11, #138). That service provides tracking information (although not a return receipt, like certified mail would provide). And the tracking information suggests Defendants received those documents on October 14, 2022. (*Id.*). Moreover, according to Defendants, rather than send a blank waiver of service form for the Defendants to

---

[1] In Jones's companion case against the City of Cincinnati, the Court first found Jones had not attached sufficient right-to-sue letter against those defendants. (*Jones v. City of Cincinnati*, No. 1:22-cv-530, S.D. Ohio, Doc. 15). Here though, Jones's right-to-sue letter identifies ODPS as the charged party. (Doc. 1-2, #40). Further, the right-to-sue letter, issued on August 16, 2022, shows that Jones timely filed this suit on October 13, 2022. (*Id.*).

3

complete and file, Jones instead filled out the form with his own information. (Doc. 12, #142). Then, ODPS—and only ODPS—completed a new waiver of service form and returned it to Jones. (Doc. 5). So as far as the Court can tell, neither Moore nor Joseph executed a waiver of service nor has Jones ever properly served them.

On December 13, counsel appeared on behalf of ODPS. (Doc. 7). To date, no counsel has formally entered an appearance for Moore or Joseph.[2] (*See id.*). Despite that, counsel who appeared for ODPS moved to dismiss that same day, and she purported to do so on behalf of all three Defendants. (Doc. 8). In that motion, Defendants claim that Jones's Complaint is defective under both Rule 12(b)(1) and 12(b)(6). (*Id.* at #118).

For Jones's part, he calculated that Defendants only had until December 12 to respond to his Complaint (60 days after he mailed the Complaints and waiver of service forms by Priority Mail). So on December 13, the same day that Defendants moved to dismiss, Jones applied for an entry of default and moved for default judgment. (Doc. 10; Doc. 11, #136).

Defendants responded three days later, moving for leave to file their (already-filed) Motion to Dismiss out of time. (Doc. 12). There, Defendants asserted that they believed they had until December 13 to respond. (*Id.* at #143). But in an abundance

---

[2] Interestingly, though, counsel states she "enters her appearance as Co-Counsel for *Defendants* Ohio Department of Public Safety in the above cited case." (Doc. 7, #116 (emphasis added)). Thus, perhaps she intended to list multiple Defendants in the notice of appearance.

4

of caution, Defendants requested that the Court consider the motion to dismiss, even if untimely by one day, based on excusable neglect. (*Id.* at #143).

All matters are now ripe.

## LEGAL STANDARD

As noted, Defendants have moved to dismiss Jones's Complaint for "lack of subject-matter jurisdiction" and for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1), (b)(6). When reviewing a facial challenge to a Court's subject-matter jurisdiction under Rule 12(b)(1), the Court must take as true all the well-pleaded allegations in the complaint. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). The Court looks to the complaint for a "short and plain statement of the ground for the court's jurisdiction." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss [for lack of jurisdiction]." *Id.* (quoting *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009)).

In resolving that motion under Rule 12(b)(6), on the other hand, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted). That is so, however, only as to well-pled factual allegations. The Court need not accept "'naked assertions' devoid of 'further factual

enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Based on the well-pled facts, the Court must determine whether Jones has plausibly alleged any of the legal claims that he asserts.

## LAW AND ANALYSIS

**A. The Court Grants Defendants' Motion For Leave To File Out Of Time And Denies Jones's Motion For Default Judgment.**

To start, Jones moved for an entry of default and for default judgment against Defendants for their alleged failure to timely respond to his Complaint. (Docs. 10, 11). Under Federal Rule of Civil Procedure 55, the clerk may find a party in default where they have "failed to plead or otherwise defend" within the required time after being served or waiving service. Defendants ask the Court to overlook the out-of-time filing, if they indeed filed out of time.

Resolving this issue is not straightforward, mainly because the facts surrounding service are messy. To begin, Jones never properly served any of the three Defendants—Priority Mail is not a recognized means of service. *See* Fed. R. Civ. P. 4; Ohio Rule Civ. P. 4.1. Separately, it is unclear whether Jones properly asked Defendants to waive service. Rather than sending each Defendants two copies of the blank form, as Rule 4 specifies, Defendants say Jones mailed each a single copy of the waiver form pre-filled with his *own* information. (Doc. 12, #142); Fed. R. Civ. P. 4(d)(1)(C). Beyond that, there is some question whether Rule 4(d), which covers waiver of service, even applies to state and local government defendants like ODPS. *See Moore v. Hosemann*, 591 F.3d 741, 747 (5th Cir. 2009); *Lepone-Dempsey v. Carroll*

6

*Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007). After all, Federal Rule of Civil Procedure 4(d), by its own terms, allows a plaintiff to request an "individual, corporation, or association" waive service, and ODPS is none of those. And while Moore and Joseph are individuals, neither seemingly waived service. Indeed, in the motion to dismiss, Moore, who was no longer employed at ODPS when Jones mailed his Summons and Complaint there, purports to preserve his service-based and personal-jurisdiction-based arguments. (*See* Doc. 8, #119, n.1). (That said, it is likely he waived those arguments by failing to develop them or actually seek dismissal based on them. Fed. R. Civ. P. 12(g), (h); *Glob. Lift Corp. v. Hiwin Corp.*, No. 14-cv-12200, 2016 WL 3418440, at *5 (E.D. Mich. June 22, 2016).)

On top of all that, the parties agree that Defendants moved to dismiss—at most—one day late. Under Federal Rule of Civil Procedure 6(b)(1)(B), a court may extend the time to respond "on motion made after the time has expired" for "excusable neglect." Here, given all the vagaries around service and waiver, and given that Defendants were tardy by at most one day, the Court finds excusable neglect. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). The minor delay (if it was one) caused no prejudice to Jones or the Court. Counsel quickly moved in good faith for an extension and sought only one-day grace for an already-filed responsive motion. The Court therefore **GRANTS** Defendants' Motion for Leave to File Out of Time (Doc. 12). And because the Motion to Dismiss is thus timely, the Court **DENIES** Jones's Motion for Default Judgment. (Doc. 11).

7

**B.     Jones Has Not Plausibly Alleged A Title VII Claim Against ODPS.**

With the timing issue addressed, the Court turns to the Motion to Dismiss itself, starting with Jones's Title VII claim for racial discrimination in hiring. Title VII prohibits employers from taking certain discriminatory employment actions. 42 U.S.C. § 2000e-2(a). Jones asserts his Title VII claim solely against ODPS, claiming the state agency prevented the Cincinnati Police Department from hiring him, and did so on racially discriminatory grounds. ODPS responds that it cannot be liable to Jones under Title VII because ODPS is not Jones's current or prospective "employer." The Court agrees with ODPS.

Twenty years ago, the Sixth Circuit identified three ways a defendant could count as a plaintiff's "employer," and thus bear potential liability, under Title VII. *Satterfield v. Tennessee*, 295 F.3d 611, 617 (6th Cir. 2002).[3] The first is a control theory, which courts rely on to distinguish employer-employee relationships (which are subject to Title VII) from independent contractor relationships (which are not). *Id.* (citing *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 319 (6th Cir. 2001)). That distinction is not at issue here. Second, the circuit has looked to common law agency principles to define who is an "employer." *Id.* Here, ODPS would not qualify as Jones's "employer" under that test. Third, the circuit has held that "a plaintiff may hold liable a party 'who significantly affects access of any individual to employment opportunities.'" *Id.* (quoting *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 875

---

[3] Although *Satterfield* is an ADA case, "Title VII, the ADEA, and the ADA define 'employer' essentially the same way, [and therefore] an analysis based on Title VII, the ADEA, and the ADA case law is appropriate [in a Title VII case]." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997).

8

(6th Cir. 1991)). This third approach comes closest to the facts here and thus warrants further discussion.

Courts often refer to this category, which the Sixth Circuit adopted in *Christopher v. Stouder Memorial Hospital*, as the "interference" theory. It extends Title VII liability beyond "employers," as traditionally understood, to include entities who control whether an individual can "access" employment opportunities. In *Christopher*, for example, the plaintiff nurse worked directly for doctors who practiced at a particular hospital. 936 F.2d at 872, 875–76. The hospital—which employed neither the doctors nor the nurse—terminated her privileges, effectively preventing the plaintiff from continuing to work for those doctors. *Id.* at 872–73. The Sixth Circuit said the hospital's interference with her employment made it an "employer" for Title VII purposes. *Id.* at 875–77; *see also Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1342 (D.C. Cir. 1973).

Later cases, though, cast at least some doubt on the continuing viability of the interference theory, or at least its scope. *See Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004); *Post v. Trinity Health-Michigan*, 44 F.4th 572, 579 (6th Cir. 2022); *Smiley v. Ohio*, No. 1:10–cv–390, 2011 WL 4481350, at *4 (S.D. Ohio Sept. 27, 2011). In *Shah*, for example, the Sixth Circuit relied on a common law agency test to determine whether the defendant stood in the role of an employer. 355 F.3d at 499. And it questioned "whether the reasoning in *Christopher* can be reconciled with [the circuit's] more recent cases." *Id.* at 500. Picking up on that suggestion, in *Smiley*, this Court held that the Sixth Circuit would likely narrow *Christopher* if afforded the

9

opportunity. 2011 WL 4481350, at *4. Finally, last year in *Post*, the Sixth Circuit recast *Christopher* as reflecting a form of "joint-employer theory," presumably meaning a Title VII defendant must look *something* like the plaintiff's employer to face potential Title VII liability. 44 F.4th at 579. For example, in *Christopher*, the hospital controlled the plaintiff's physical workplace (the hospital itself). 936 F.2d at 872. And, of course, control over the workplace is a traditional indicium of an "employer."

As noted, Jones's best shot at surviving dismissal here relies on this interference theory. But for two reasons, the Court concludes that he has failed to state a plausible claim under that theory. First, for Jones's theory to work, the Court would need to extend *Christopher* beyond its existing scope. As described above, *Christopher* involved a third party who controlled physical access to the employee's workplace. 936 F.2d at 875. Not so here. True, ODPS controls who may access LEADS, and Cincinnati police routinely access LEADS to perform their jobs. But ODPS does not provide a literal workspace for police officers. So ODPS has not *physically* denied Jones's access to his workplace as a Cincinnati police officer. Jones may respond that the agency denied him access to a "virtual workspace." But given the Sixth Circuit's more recent treatment of *Christopher*, the Court declines to stretch the interference doctrine to cover the "virtual" environment.

The facts also differ in another, somewhat related, way. In *Christopher*, the hospital's decision "bound" the physicians. *See* 936 F.2d at 872. That is, the physicians could not unilaterally elect to continue employing the nurse in the hospital operating

10

room. Here, by contrast, the Cincinnati Police Department controls the qualifications for its police force—the Department could hire Jones as a police officer even without LEADS access. So unlike in *Christopher*, where the hospital's choice per se disqualified the nurse from the employment at issue, here *the Department* chose to make LEADS access a mandatory qualification. *See Satterfield*, 295 F.3d at 618 (declining to find the defendant liable under the "interference" theory where the direct employer merely relied on the defendant's advice).

To illustrate, imagine the Department made employment contingent on passing a physical fitness test that a third party designed. If an otherwise qualified recruit fails the test and loses their job offer, that third party does not suddenly become the recruit's "employer" under Title VII. Sure, if a test is discriminatory, an employer who makes passing that test a condition of employment may face charges of discrimination. *See Ricci v. DeStefano*, 557 U.S. 557, 577–78 (2009). But it is the entity that *relies on* the test, not the entity that designs the test, that counts as the "employer" under Title VII.

Just so here. ODPS is not Jones's "employer" for Title VII purposes, and so Jones cannot hold ODPS liable under that statute.[4]

---

[4] Of course, if ODPS or its employees deny a police recruit access to LEADS on racially discriminatory grounds, that may create liability under *other* statutes, like § 1983. The Court addresses that statute below.

## C. The Facts As Alleged Show That Jones's § 1983 Claim Is Untimely.

The Court turns next to Jones's § 1983 claim against Monroe and Joseph. The Defendants say the applicable statute of limitations bars Jones's claim. (Doc. 8, #122). The Court agrees.

Although the statute of limitations is an affirmative defense, dismissal on timeliness grounds is appropriate "if the allegations in the complaint affirmatively show that the claim is time-barred." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (internal quotations omitted). But "it is the defendant's burden to show that the statute of limitations has run." *Id.* In determining whether the defendant has met that burden at the dismissal stage, the Court generally must consider: (i) the applicable statute of limitations time period, (ii) when the action accrued (and thus set that time period in motion), and (iii) whether any tolling period exists. *See, e.g.*, *Hollis v. Erdos*, 480 F. Supp. 3d 823, 829–30 (S.D. Ohio 2020).

Congress did not include a statute of limitations in the text of 42 U.S.C. § 1983. Instead, state law provides the applicable period. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). And in Ohio—where all the relevant events occurred—the applicable period is two-years. *Basista Holdings, LLC v. Ellsworth Township*, 710 F. App'x 688, 691 (6th Cir. 2017). On the other hand, federal law controls when a § 1983 action accrues. *Sevier*, 742 F.2d at 272. And that accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 273.

Jones alleges Monroe and Joseph violated his right to equal protection under the laws when they denied him access to the LEADS system because of his race. (*Id.*

12

at #4, 12, 35). That denial—and so his injury—occurred on November 13, 2019. (Doc. 1-10, #76). Moreover, Jones likely had reason to know of the alleged discriminatory nature of his denial not long afterward. But even if it took Jones some time to discover the discriminatory nature, Jones at the *very* latest knew on January 16, 2020. On that day, he apparently filed a Charge of Discrimination containing these same allegations against ODPS. (Doc. 1-3, #48). Yet he did not file his Complaint until October 13, 2022. (*See* Doc. 1).

Accordingly, Jones filed his § 1983 claim outside the limitations period. And he has made no request for equitable tolling under Ohio law, nor has he alleged any facts suggesting that such tolling would be appropriate. *See Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015) (applying state tolling principles to a § 1983 claim); *Roach v. Vapor Station Columbus, Inc.*, No. 21AP-511, 2022 WL 2211529, at *2 (Ohio Ct. App. June 21, 2022) (describing Ohio equitable tolling standards). The Court thus dismisses Jones's § 1983 claim as time barred.

**D.     The Court Lacks Jurisdiction to Hear Jones's State Law Claims.**

Jones has also sued Defendants under Ohio Revised Code §§ 4112.02 and/or 4112.99. Jones believes these state statutes, which prohibit racial discrimination in employment, provide him another avenue for his requested monetary relief. They do not.

First, the Sixth Circuit has held that Eleventh Amendment immunity bars federal courts from hearing pendent state claims under §§ 4112.02 or 4112.99 against the State of Ohio or its officers in their official capacities (which is just another way

13

to sue the State itself). *McCormick v. Miami Univ.*, 693 F.3d 654, 657, 664 (6th Cir. 2012) ("Congress has not abrogated the Eleventh Amendment for state law claims, nor has Ohio waived sovereign immunity." (citation omitted)). Jones thus cannot pursue his §§ 4112.02 and 4112.99 claims against ODPS and against Moore and Joseph in their official capacities in this Court. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520–21 (6th Cir. 2007) ("[P]endent state law claims against state officials in their official capacity are barred by the Eleventh Amendment.").

Nor may Jones pursue his claims against Moore and Joseph in their individual capacities. Again, the Sixth Circuit provides clear guidance: "[S]tate law claims against [a state employee] in their individual capacity are barred under the Ohio Revised Code §§ 9.86 and 2743.02(F)" unless the plaintiff first files in the Ohio Court of Claims to determine whether the employee should receive state law immunity. *McCormick*, 693 F.3d at 664–65 (citing Ohio Rev. Code § 2743.02(F)); *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989) ("Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86."). Jones has not alleged that he pursued these claims in the Ohio Court of Claims. Thus, as things stand, this Court also lacks jurisdiction to hear Jones's claims against Moore and Joseph in their individual capacities. *See McCormick*, 693 F.3d at 665 (describing this requirement as jurisdictional). The Court dismisses Jones's state-law claims.

### E. The Court Grants Jones Thirty Days To Seek Leave To File An Amended Complaint.

That said, Jones is proceeding pro se. So the Court will provide him an opportunity to seek leave to amend his Complaint to rectify the issues noted above, if he can. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Specifically, the Court grants Jones thirty days to move under Fed. R. Civ. P. 15(a)(2) for leave to file an Amended Complaint addressing the deficiencies set forth above, and attaching the proposed Amended Complaint as an exhibit to that motion.

### CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' Motion for Leave to File Out of Time (Doc. 12) and **DENIES** Jones's Motion for Default Judgment (Doc. 11). Next, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 8) and **DISMISSES** Jones's Complaint (Doc. 1) **WITHOUT PREJUDICE**. The Court further **GRANTS** Jones thirty days to seek leave to file an Amended Complaint under Rule 15(a)(2) addressing the deficiencies set forth above and attaching that proposed Amended Complaint. During that time, this Court retains jurisdiction over this action.

**SO ORDERED.**

May 24, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

15